594 A.2d 812

**Harold SCHMIDT, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (Davis FETCH), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 17, 1991.

Decided June 26, 1991.

Alexander J. Pentecost, for petitioner.

Fred C. Trenor, for respondent.

Before COLINS, and BYER, JJ., and BARBIERI, Senior Judge.

BARBIERI, Senior Judge.

Harold Schmidt (claimant) seeks review of an order of the Workmen's Compensation Appeal Board (board) issued pursuant to The Pennsylvania Workmen's Compensation Act,[1] wherein the board affirmed a referee's award of total disability benefits from December 2, 1987 through October 31, 1988 and partial disability benefits beginning November 1, 1988 and continuing indefinitely. We will affirm in part and reverse in part.

■ The only issue before us is whether claimant, through his testimony at the hearing held by the referee on November 1, 1988, voluntarily removed himself from the job market so as to relieve his former employer, Davis Fetch, from the burden of establishing work availability. Relevant to this issue are the following findings made by the referee:

1. On February 4, 1988, the claimant, Harold Schmidt, filed a Petition to Review. In the petition, the claimant alleges that his shoulder condition has worsened, necessitating surgery, and that he is entitled to total disability benefits.

2. Claimant was originally injured on July 23, 1981, during the course and scope of his employment for employer, Davis Fetch. Claimant worked for the employer as a carpenter, and injured his right shoulder when he fell on a scaffold.

3. On August 19, 1981, the employer issued a Notice of Compensation Payable, pursuant to which claimant received [total disability benefits].... Pursuant to [a] Supplemental Agreement, claimant began to receive [partial

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1031.

disability] benefits ... and continues to receive benefits at that rate.

. . . .

6. Claimant was born on February 21, 1917, and was approximately seventy-one years of age at the time that he filed the instant petition. Since the time of claimant's July 23, 1981 work injury, claimant has retired and receives pension benefits. Claimant was found to be credible when he testified that his work injury caused him to retire.

. . . .

11. Thomas W. Cowan, M.D., who first examined the claimant on December 2, 1987 testified on the claimant's behalf. Based upon his December 2, 1987 examination, and upon the claimant's history, Dr. Cowan diagnosed that the claimant's history and findings were compatible with an old rotator cuff tear from his 1981 injury, and an acute and chronic bursitis of his right shoulder causing his increased symptoms....

. . . .

15. Subsequent to the claimant's surgery, Dr. Cowan last saw the claimant on May 25, 1988. At that time, Dr. Cowan diagnosed that the claimant had suffered from chronic complete rotator cuff tear of his right shoulder with chronic bursitis and tendonitis. Dr. Cowan opined that the claimant's shoulder problems were due to a rotator cuff tear, that was caused by the claimant's 1981 work injury.

16. Based upon his diagnosis, Dr. Cowan opined that claimant is not capable of performing his former job as a carpenter. Dr. Cowan opined that from the time of his first examination on December 2, 1987 through his last examination on May 25, 1988, claimant was totally disabled from any work whatsoever. As of May 25, 1988,

Dr. Cowan opined that claimant had a limited employment capability in sedentary work only.

17. This Referee accepts the credible opinion of Dr. Cowan and finds that the claimant was totally disabled from December 2, 1987 through May 25, 1988 due to a worsening of the claimant's 1981 work-related shoulder injury.

18. The employer submitted no medical testimony. The employer concedes that claimant has demonstrated a change in his medical condition in that he was totally disabled from December 2, 1987 through May 25, 1988. The employer argues that claimant was capable of resuming light duty and/or sedentary employment after May 25, 1988.

19. Based upon the credible opinions of Dr. Cowan, this Referee finds that claimant was capable of performing sedentary work as of May 25, 1988.

20. The employer has not provided evidence of sedentary work available to the claimant. The employer contends that it is relieved of the burden to establish work availability because claimant has voluntarily removed himself from the job market. Claimant seeks total disability benefits for an indefinite period.

21. At the November 1, 1988 hearing, claimant was evasive when asked about his ability to do light duty work and demonstrated to this Referee that he had no interest in sedentary work.

22. Claimant voluntarily removed himself from the job market at the November 1, 1988 hearing.

Findings of Fact Nos. 1–3, 6, 11, 15–22. Based thereon, the referee concluded that:

1. Claimant has sustained his burden of proving that he experienced a worsening of his 1981 work-related shoulder condition, as of December 2, 1987.

2. The claimant has established that he was totally disabled from December 2, 1987 through May 25, 1988.

3. The claimant has not established that he has been available to work as of May 25, 1988.[2]

4. The employer has the burden of proving that work is available that claimant was capable of performing as of May 25, 1988 unless the claimant voluntarily removes himself form [sic] the job market.

5. Where the claimant has voluntarily removed himself from the job market, the employer is not obligated to find work available for him.

6. Claimant is entitled to total disability benefits from December 2, 1987 through October 31, 1988, and thereafter is entitled to partial disability benefits.

Conclusions of Law Nos. 1–6.

On appeal, the board affirmed. It is from this order that claimant filed the instant petition for review.

■ In *Dugan v. Workmen's Compensation Appeal Board (Fuller Co. of Catasauqua)*, 131 Pa.Commonwealth Ct. 218, 569 A.2d 1038 (1990), upon which the board relied, the claimant argued that an employer, after an employee's retirement, still carries the burden of proving that there was work available to the employee prior to his retirement. We responded:

As a general rule, to suspend benefits because a claimant no longer suffers a loss of earning power caused by an occupational injury, the employer must prove that employment is available to the claimant. *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987). This rule is inapplicable where a claimant states unequivocally

---

**2.** Claimant had no such burden of proof. In this modification proceeding where claimant alleged total disability, he had the initial burden of proving an increase in disability and that he is incapable of performing as a carpenter. Once claimant succeeded in sustaining this burden, the burden shifted to employer to prove that work was available to claimant within his medical limitations. *H.B. Sproul Construction Co. v. Workmen's Compensation Appeal Board*, 60 Pa.Commonwealth Ct. 413, 421 n. 8, 431 A.2d 1143, 1147 n. 8 (1981), *overruled on other grounds, FMC Corp. v. Workmen's Compensation Appeal Board (Wadatz)*, 116 Pa.Commonwealth Ct. 527, 542 A.2d 616 (1988).

that he has no intention of seeking future employment. An employer need not prove the availability of employment, which a claimant has no intention of pursuing.

. . . .

... The present record contains Claimant's own unequivocal testimony that he is retired and will no longer attempt to obtain employment.[3]

The law is settled that for purposes of workmen's compensation, the term disability is synonymous with a 'loss of earning power.' *Scobbie v. Workmen's Compensation Appeal Board (Greenville Steel Car Company)*, 118 Pa.Commonwealth Ct. 424, 545 A.2d 465 (1988), petitions for allowance of appeal denied, 552 [sic] Pa. 606, 562 A.2d 828; 522 Pa. 607, 562 A.2d 829 (1989). Although a claimant may continue to suffer a work-related physical disability, if that disability does not occasion a loss of earnings, then payment of workmen's compensation must be suspended. Id. Claimant's loss of earnings was caused by his voluntary retirement and withdrawal from the labor market. Claimant's loss of earnings was not occasioned by his injury. Therefore, we conclude that workmen's compensation benefits were properly suspended.

*Id.,* 131 Pa.Commonwealth Ct. at 222–224, 569 A.2d at 1040–1041.

Claimant, however, argues that *Dugan* is not dispositive here. We agree.

At the November 1, 1988 hearing before the referee, claimant testified on cross-examination that his work injury caused him to retire and that he is presently receiving pension benefits. 11/1/88 Hearing Transcript at 8–9. He likewise expressed his disagreement with Dr. Cowan's opin-

---

**3.** The following exchange took place between the referee and the claimant in *Dugan:*
    Q. Are you attempting to obtain employment, Mr. Dugan?
    A. No, I am retired.
*Id.* at 221, 569 A.2d at 1040.

ion that he could do light duty work, but when asked what prevents him from doing light duty or sedentary employment, he responded, "I don't know what he [Dr. Cowan] means by light duty...." *Id.* at 9. Other exchanges on cross-examination upon which the referee could have conceivably relied are as follows:

Q. He [Dr. Cowan] said that you could work as long as you didn't have to lift—

A. I am trained as a carpenter and I don't know no other work.

Q. The question is, what prevents you from doing light duty or sedentary employment, do you want to do that kind of work?

A. What prevents me?

Q. Yes.

A. I'm not trained for anything else but carpenter work.

Q. Do you think you can work as a cashier in a service station?

A. No.

. . . .

A. ... He [Dr. Cowan] wants me to strengthen that muscle [in my right arm] and I don't know if it ever will be strengthened.... to shave, I have to hold my [right] arm with the other hand.

Q. Do you think that you could work at a job where you don't have to use your right arm?

A. I don't know what jobs there are.

. . . .

Q. Dr. Cowan says that you can use the [right] arm for light activities such as on an assembly line, not working on an assembly line, but changing or handling light objects. Do you agree with that?

A. I will agree with it if I can pick them up from my elbow down.

Q. You can use that arm as long as you don't have to go up any higher than the elbow, is that your testimony?

A. That's right. I think he [Dr. Cowan] also stated that I can't—anything five or ten pounds.

Q. He [Dr. Cowan] also said that you could do fine manipulation with the right arm....

. . . .

Q. ... Using your fingers to manipulate objects.

A. There's nothing wrong with [my] fingers.

*Id.* at 10–11, 13. This testimony, in our opinion, is simply not comparable to the testimony in *Dugan* which led us to find the *Kachinski* work availability rule inapplicable.

Here, claimant did not unequivocally state that he has no intention of seeking future sedentary employment. Moreover, claimant testified, and the referee so found in Finding of Fact No. 6, that his work injury caused him to retire.[4] Accordingly, it cannot be said that claimant's loss of earnings was caused by voluntary retirement and withdrawal from the labor market as was the case in *Dugan.*

■ Because we find the referee's determination that claimant voluntarily removed himself from the job market unsupported by the record, employer was obligated to establish that work was available to claimant within his medical limitations in accordance with *Kachinski.* We are therefore constrained to reverse the order of the board to the extent that it affirmed the referee's award of partial, rather than total, disability for the period beginning Novem-

---

**4.** As we stated in *McAfee v. Workmen's Compensation Appeal Board (Allegheny General Hospital)*, 134 Pa. Commonwealth 562, 569 n. 7, 579 A.2d 1363, 1367 n. 7 (1990): "obviously, if Claimant retired because of his [work-related] injury, Claimant suffered a loss of earning power."

ber 1, 1988.[5] In all other respects, the board's order is affirmed.

BYER, J., concurs in the result only.

## ORDER

AND NOW, this 26th day of June, 1991, the order of the Workmen's Compensation Appeal Board, at No. A89–1004, dated October 3, 1990, is hereby affirmed in part and reversed in part in accordance with the foregoing opinion. Davis Fetch is directed to pay total disability benefits to Harold Schmidt beginning November 1, 1988 and continuing indefinitely.

5.  An award of total disability is warranted when an employer fails to sustain his burden of proving the availability of work within a claimant's medical limitations. *H.B. Sproul Construction Co. v. Workmen's Compensation Appeal Board*, 60 Pa.Commonwealth Ct. 413, 421 n. 8, 431 A.2d 1143, 1147 n. 8 (1981), *overruled on other grounds, FMC Corp. v. Workmen's Compensation Appeal Board (Wadatz)*, 116 Pa.Commonwealth Ct. 527, 542 A.2d 616 (1988).