Edward HEPLER, Petitioner

v.

WORKERS' COMPENSATION APPEAL BOARD (PENN CHAMP/BISSEL, INC.), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 23, 2005.
Decided Jan. 11, 2006.
Reargument Denied Feb. 24, 2006.

Samuel S. Blaufeld and Barbara E. Holmes, Pittsburgh, for petitioner.

Francis A. Veltri, Wexford, for respondent.

BEFORE: SMITH–RIBNER, Judge, and COHN JUBELIRER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Edward Hepler (Claimant) petitions for review of a decision of the Workers' Compensation Appeal Board (Board) which reversed the decision of a Workers' Compensation Judge (WCJ) who dismissed the Modification Petition filed by Penn Champ/Bissel, Inc. (Employer). We affirm for the reasons set forth below.

■ Pursuant to a Notice of Compensation Payable, Claimant began receiving benefits for an injury described as "Right Knee" which occurred on November 3, 1993. On February 12, 2003, Employer filed a Modification Petition alleging that Claimant has voluntarily withdrawn from the workforce and that his loss of earnings is not attributable to his work injury. Claimant filed an Answer denying the allegations in Employer's Modification Petition and alleging that his work injury is the sole reason why he is not working. On April 2, 2004, the WCJ issued a decision

which contained the following relevant Findings of Fact:

4. The Employee last worked for the Employer during March of 2001. He stopped working at that time because [of] a right hip problem which is not related to his work injury. He never returned to employment for wages after March 2001 although he was released by his treating physician, Raj K. Sinha, M.D., to return to sedentary part-time work during June 2001. He was granted disability benefits by the Social Security Administration on March 20, 2001, effective September 1999. On May 17, 2001, he was granted a disability pension effective September 1, 1999 by the National Industrial Group Pension Plan for Labor Management Group (NIGPP); this pension is totally funded by the participating employers.

5. Whether the Employee removed himself from employment by voluntarily retiring is the issue in this case. He went through the bureaucratic process for each of his two pensions. He inquired as to a pension from NIGPP during the summer of 2000. He applied for his Social Security pension on September 13, 2000, and for his pension from NIGPP after he was granted the prerequisite Social Security disability pension. He testified that the Employer terminated his employment when he was granted his Social Security pension. The Employer, through the testimony of its inventory and warehouse manager, Barbara J. Radzminski, maintained that the Employee was not terminated and that he voluntarily retired.

6. The testimony of Ms. Radzminiski is credible. Much of her testimony was not disputed but I accept her testimony over contrary statements or implications. The Employer has a formal step-by-step process for terminating its employees which was not followed for the Employee. The Employee did not file a grievance as to a termination under the procedures provided by his union's contract with the Employer as he certainly would have done if he were summarily terminated as alleged.

7. The Employee has made no attempt to return to employment since he was released to do so by Dr. Sinha. He agreed that Dr. Sinha released him to return to employment during June of 2001. (Employer Exhibit A).

8. There was not a medical issue but the Employee clearly remains disabled by his work injury. His testimony that he has had nine surgical procedures performed on his injured knee was not disputed. The Employer voluntarily reinstated his total disability benefits when he stopped working during March 2001. The Employee's testimony that when he stopped working the sedentary paper work [job] which he had been performing had ended and he was just sitting in the Employer's lunch room for four hours a day is consistent with the statement of the plant manager, Jack Graham, to the Social Security Administration on January 29, 2001 that the Employee's stringent work restrictions are such that the duties which were created for him fill approximately one hour of a four hour work day. (Employee Exhibit 3).

9. The Employee's testimony that he would have continued to work for the Employer is credible.

10. The Employee was not terminated from employment by the plant manager, Mr. Graham, or by the Employer's insurance manager, Patsy Brogan, as he alleged. However, his testimony as to his contacts with these individuals is completely consistent with encouragement by them to apply for his disability

**1128**

pension. His disability retirement was in the best interest of the Employer and of the Employee because of the severe limitations imposed by the work injury. 11. The Employee's injury placed him in a position where disability retirement was his only viable option. His injury was at least the major factor in his decision to accept disability retirement. (WCJ's Decision, pp. 1–2). Therefore, the WCJ concluded that Claimant did not voluntarily remove himself from the workforce. Accordingly, the WCJ dismissed Employer's Modification Petition. Employer appealed to the Board, which reversed the decision of the WCJ. The Board, citing *County of Allegheny (Department of Public Works) v. WCAB (Weis )*, 872 A.2d 263 (Pa.Cmwlth.2005), determined that it was Claimant's burden to prove that he was forced out of the entire labor market, not just his pre-injury job, by his work-related injury. The Board concluded that Claimant failed to meet this burden because "he testified that he had not searched for work since he left his employment with [Employer] in March of 2001, and that he did not return to work after being released by his doctor from his unrelated hip injury in June of 2001." (Board's Decision, p. 5). Claimant's appeal to this Court followed.[1]

On appeal, Claimant argues that the Board erred in determining that the *Weis* case required reversal of the WCJ's decision that Claimant did not voluntarily retire and that, after determining that *Weis* applied, the Board should have remanded this case to the WCJ for additional testimony in order to ascertain whether Claimant sustained his burden.

In *Weis*, the claimant, who was a heavy equipment operator, sustained a left knee injury. After paying benefits for twenty years, the employer filed a suspension petition because the claimant voluntarily retired from the workforce. At the hearings before the WCJ, the director of the employer's retirement board credibly testified that the claimant's disability retirement application indicated that he retired because he could no longer perform his job. Additionally, the employer's physician credibly testified that the claimant was capable of performing sedentary work. The WCJ found that claimant remained physically incapable of performing his pre-injury job and that the employer presented no evidence that work was available within claimant's limitations. Accordingly, the WCJ determined that the claimant did not voluntarily remove himself from the work force and denied the employer's suspension petition. On appeal, the Board affirmed the WCJ's decision and stated that, given the fact that the claimant retired because he could no longer perform his pre-injury job, he sustained his burden of demonstrating that he was forced into retirement because of his work injury. The employer appealed to this Court, and we reversed the Board. Specifically, we stated that:

> Generally, to obtain a suspension of benefits, the employer must demonstrate suitable employment was made available to a claimant. *Kachinski v. Workmen's Comp. Appeal Bd. (Vepco Constr. Co.)*, 516 Pa. 240, 532 A.2d 374 (1987).

> However, our Supreme Court made that rule inapplicable in cases where the claimant retires. *Southeastern Penn-*

1. This court's appellate review over an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *Republic Steel Corporation v. Workmen's Compensation Appeal Board (Petrisek)*, 537 Pa. 32, 640 A.2d 1266 (1994).

*sylvania Transp. Auth. v. Workmen's Comp. Appeal Bd. (Henderson),* 543 Pa. 74, 669 A.2d 911 (1995). *See also Kasper v. Workers' Comp. Appeal Bd. (Perloff Bros., Inc. and Sedgwick James & Co.),* 769 A.2d 1243 (Pa.Cmwlth.2001); *Maroski v. Workers' Comp. Appeal Bd. (Bethlehem Steel Corp.),* 725 A.2d 1260 (Pa.Cmwlth.1999). In *Henderson,* the Court stated, It is clear that disability benefits must be suspended when a claimant voluntarily leaves the labor market upon retirement. The mere possibility that a retired worker may, at some future time, seek employment does not transform a voluntary retirement from the labor market into a continuing compensable disability. *An employer should not be required to show that a claimant has no intention of continuing to work;* such a burden of proof would be prohibitive. *For disability compensation to continue following retirement, a claimant must show that he is seeking employment after retirement or that he was forced into retirement because of his work-related injury. Henderson,* 543 Pa. at 79, 669 A.2d at 913 (emphasis added).

Here, it is undisputed Claimant retired and did not seek employment after retirement. Therefore, Claimant was required to prove he was forced into retirement because of his work-related injury. The WCJ and Board found Claimant was forced into retirement because his work-related injury caused him to be incapable of performing his *pre-injury* job. The question here is whether that finding is sufficient, or whether Claimant must show he was forced out of, not only his pre-injury job, but the entire labor market. **We conclude Claimant was required to demonstrate he was forced out of the entire labor market.** No case provides that a claimant only is required to

show he is forced out of his pre-injury job. Rather, each case that discusses this issue speaks in terms of the labor market. *See, e.g., Henderson,* 543 Pa. at 79, 669 A.2d at 913 ("It is clear that disability benefits must be suspended when a claimant voluntarily leaves the *labor market* upon retirement.") (emphasis added); *Republic Steel Corp. v. Workmen's Comp.Appeal Bd. (Petrisek),* 537 Pa. 32, 37, 640 A.2d 1266, 1269 (1994)("A disability which forces a claimant out of the *work force* and into retirement is compensable under the Act.") (emphasis added); *Capasso v. Workers' Comp. Appeal Bd. (RACS Assoc., Inc.),* 851 A.2d 997, 1001 (Pa.Cmwlth.2004) ("[A]fter retirement, it is a claimant's burden to demonstrate his absence from the *labor market* is involuntary.") (emphasis added); *Kasper,* 769 A.2d at 1245 ("Thus, workers' compensation benefits must be suspended when a claimant voluntarily leaves the *labor market.*") (emphasis added); *City of Phila. v. Workers' Comp. Appeal Bd. (Rooney),* 730 A.2d 1051, 1053 (Pa.Cmwlth.1999)("A disability which forces a claimant out of the *work force* and into retirement is compensable under the Act.") (emphasis added).

Our interpretation is consistent with our statement in *Shannopin Mining Co. v. Workers' Comp. Appeal Bd. (Turner),* 714 A.2d 1153 (Pa.Cmwlth.1998):

We recognize that there may be circumstances where a claimant may be forced to retire from his or her time-of-injury job due to a work-related injury, but may not be disabled from other type of work. In that situation, **the claimant must show that he or she has not voluntarily withdrawn from the entire** *labor market* **and is open to employment within his or her physical capabilities in order to be entitled to bene-**

**fits under the [Act].** *Id.* at 1155, n. 5 (emphasis in original).

. . .

Here, Claimant received benefits for 20 years. Although he retired from his pre-injury position, **the only medical evidence in the case established that he was capable of sedentary work. Nevertheless, he never sought any other position.** It is clear the burden was on Claimant to establish he was forced to retire from the entire labor market. To the extent the Board concluded otherwise, it erred. As the Claimant failed to carry his burden either by showing he was forced to retire from the entire labor market or that he sought employment, we reverse the Board, thereby granting the suspension petition.

*Weis,* 872 A.2d at 265–267 (emphasis in boldface type added).

We believe that the *Weis* case is controlling. As in *Weis,* the Claimant in this case retired and was also released by his treating physician to return to sedentary part-time work. However, Claimant testified that he has not looked for a job since being released to work. Under these circumstances, we must conclude that Claimant failed to sustain his burden of proving that he has not voluntarily withdrawn from the *entire* labor market and is open to employment within his physical capabilities. Because Claimant failed to sustain his burden of proof in this regard, he is not entitled to benefits under the Workers' Compensation Act.[2] Therefore, the Board did not err in reversing the decision of the WCJ denying Employer's Modification Petition. Because it is clear that Claimant failed to sustain his burden of proof, we see no reason why this case should, as Claimant suggests, be remanded to the WCJ for a

determination as to whether or not he sustained his burden of proof.

Accordingly, the order of the Board is affirmed.

Judge SMITH–RIBNER dissents.

### ORDER

AND NOW, January 11, 2006, the order of the Workers' Compensation Appeal Board docketed at A04–1076 is hereby AFFIRMED.

---

**2.** Act of June 2, 1915, P.L. 736, *as amended,*   77 P.S. §§ 1–1041.4; 2501–2606.